UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| STEPHANIE E.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,<br><br>    Defendant. | Case No. 22-cv-06696-RMI<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 20 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability benefits under Title II of the Social Security Act. *See* Admin. Rec. at 1.[2] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. *Id.* As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 6, 11) and both parties have moved for summary judgment (dkts. 16, 20). For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Cross-Motion for Summary Judgment is denied.

**LEGAL STANDARDS**

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in nine attachments to Docket Entry #8. *See* (Dkts. 8-1 through 8-9).

review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff has struggled with anxiety and depression for much of her life. *See* AR at 272, 273. At times, Plaintiff is able to function—to be employed, to provide for her basic needs, to care for her sister and granddaughter. *See id.* at 29, 49-50, 226-237. However, when experiencing a "depressive episode" Plaintiff is unable to get out of bed, neglects her personal care, isolates, has difficulty with concentration and memory, experiences recurring panic attacks and crying spells, and relies heavily on her son and granddaughter to provide for her basic needs. *Id.* at 58-61, 271. The cyclic nature of her symptoms is reflected in her medical and employment history. *See e.g.*, *id.* at 49-55 (detailing Plaintiff's work history and attempts to work, all of which ended due to depressive episodes); *id.* at 75-78 (2010 prior SSA decision finding Plaintiff disabled from April 2008 to May 2009 based, in part, on Plaintiff's "episodes of decompensation" which would cause Plaintiff to "miss work more than 4 days per month"); *id.* at 310 (consultative examination noting that Plaintiff has a "history of recurrent major depressive episodes lasting weeks to months"). Significantly, Plaintiff has held at least five jobs from which she has been fired after failing to report to work because of a depressive episode. *See id.* at 49 (Plaintiff noting that she worked at an

urgent care center for two months but was fired because she had a depressive episode); *id.* at 50 (Plaintiff noting that she worked as a caregiver for her sister, but couldn't continue because she had a depressive episode); *id.* at 52-55, 59 (Plaintiff describing work as a medical biller, patient account representative, and registration representative but stating that she could not maintain these positions because of depressive episodes). Indeed, Plaintiff's primary allegation is that her inability to maintain regular attendance prevents her from finding and holding gainful employment. *See* Pl.'s Mot (Dkt. 16) at 12.

Plaintiff's instant application for benefits arises out of a deterioration in her condition that began in 2019. In March of 2019, Plaintiff was seen by Dr. Reicherter, her primary psychiatrist, for an "intense" recurrence of her Major Depressive Disorder. *Id.* at 286. Dr. Reicherter increased Plaintiff's medication, noted that her symptoms were serious, and gave Plaintiff a GAF score of 41-50, which indicates severe symptoms. *Id.* In April of 2019, Plaintiff was seen by providers at Gardner Family Health. *Id.* at 271. There are three records from Gardner Family Health: an initial assessment, taken on April 13, 2019, and two "Individualized Action Plans", prepared on April 24, 2019, and September 9, 2019, respectively. At her initial assessment, Plaintiff reported having "sad days" more than fifty percent of the time, difficulty getting out of bed, daily panic attacks, difficulty caring for her basic needs, social isolation, and difficulty attending work because of these symptoms. *Id.* at 271, 275. The clinician observed slumped posture, slowed activity, depressed and anxious mood, flat affect pressured speech, circumstantial thought process, minimal insight, and moderate impairment in judgment. *Id.* Both the April and September 2019 Individualized Action Plans recommended treatment for six months, including weekly individual therapy, biweekly rehab sessions, case management, and psychiatry support. *Id.* At both appointments, Plaintiff's symptoms were equivalent to those reported at her initial assessment. *See id.* at 277, 280. It is unclear whether Plaintiff received the recommended treatment, as there are no other records from Gardner Family Health in the administrative record.

The remainder of Plaintiff's mental health treatment was provided by Dr. Reicherter, who saw Plaintiff throughout 2019 and 2020 and prescribed her medications. *See id.* at 283-301, 312-330. As the ALJ noted in her decision, Dr. Reicherter's treatment notes are "sparse." *Id.* at 33.

3

However, Plaintiff repeatedly reported that her condition was worsening, and that her medications failed to adequately manage her symptoms. *Id.* at 320 (March 2020 note that "since last visit, [Plaintiff] reports feeling worse"); *id.* at 320 (April 2020 note that Plaintiff is "experiencing increased anxiety"); *id.* at 319 (June 2020 note that Plaintiff "reports feeling worse" despite "utility from increased lorazepam"). *Id.* at 320. Indeed, in April of 2020, Plaintiff used a 30-day supply of anti-anxiety medication within two weeks, and was, at the time, "talking to a therapist daily." *Id.* There are no records of Plaintiff's reported daily therapy appointments in the administrative record.

In March of 2020, Plaintiff was examined by Dr. Chandler, a consultative examiner, at the direction of the SSA. *Id.* at 307-11. Plaintiff reported similar symptoms to Dr. Chandler as are discussed above. *See id.* at 308-09. Dr. Chandler observed that Plaintiff demonstrated a moderately dysphoric mood and restricted affect, was tearful and appeared fatigued, that her insight and judgment were compromised, and that she had difficulties with memory. *Id.* Dr. Chandler concluded that Plaintiff would have mild or moderate difficulty in most areas of work-related functioning. *Id.*

In addition to her mental impairments, Plaintiff also struggles with obesity and has been diagnosed with hyperparathyroidism. *See id.* at 288, 290, 293, 295, 300, 309, 329 (hyperparathyroidism) *and id.* at 56, 290, 29, 299, 328 (obesity). There is evidence that Plaintiff was being assessed to determine whether her hyperparathyroidism required surgery, specifically a parathyroidectomy, and that weight gain was a persistent problem. *See id.* at 290. Notably, the symptoms of hyperparathyroidism include, among others, depression, forgetfulness, bone and joint pain, and fatigue.[3]

In May of 2021, Plaintiff attended a hearing before the ALJ. *Id.* at 42-69. Plaintiff was unrepresented. *Id.* at 46. Plaintiff's testimony was largely consistent with the above summary of her medical records. She testified that she experienced "depressive episodes" that prevented her from being able to work and that her symptoms included lack of motivation, being unable to get

---

[3] *Hyperparathyroidism*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/hyperparathyroidism/symptoms-causes/syc-20356194 (last visited March 20, 2024).

4

out of bed, an inability to concentrate, trouble with memory, weight gain, tearfulness and crying spells, low energy, recurrent panic attacks, and hypervigilance. *See id.* at 57-61. She testified that she had lost five jobs because of attendance issues due to depressive episodes (*see id.* at 59), that much of her mental health care was not covered by insurance, and her inability to pay out-of-pocket limited her access to adequate treatment (*see id.* at 62). Plaintiff noted that her episodes of severe depression and anxiety were worsening in severity and duration, and maintained that although she wanted to work, she was unable to consistently show up to and perform work because of her symptoms. *See id.* at 60, 63.

## THE ALJ DECISION

The ALJ engaged in the required five step sequential evaluation process. *See id.* at 27-37. At step one, the ALJ determined Plaintiff had not performed substantial gainful activity during the relevant period, finding that Plaintiff's attempts to work were unsuccessful and that both attempted jobs ended due to depression. *Id.* at 29. At step two, the ALJ determined Plaintiff's severe impairments were major depressive disorder, anxiety, and obesity. *Id.* at 30. The ALJ found Plaintiff's hypertension to be non-severe; the ALJ did not address Plaintiff's hyperparathyroidism diagnosis. *Id.* At step three, the ALJ found that none of Plaintiff's conditions met or equaled any listed impairment. *Id.* In formulating Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform medium work, with several exertional and non-exertional limitations. *Id.* at 31. The ALJ did not include any limitations on Plaintiff's ability to stay on task, or on her ability to maintain regular attendance. *See id.* In reaching this determination, the ALJ dismissed Plaintiff's symptom testimony because it was "not entirely consistent with the medical evidence and other evidence in the record" and was "not supported" because "the record documents essentially 'moderate' symptoms of anxiety and depression." *Id.* at 33. At step four, the ALJ found that Plaintiff was incapable of completing her past relevant work as a medical record coder, patient insurance clerk, and registration clerk. *Id.* at 36. At step five, the ALJ concluded that, based on Plaintiff's RFC and the testimony of a Vocational Expert ("VE"), Plaintiff was capable of work in the representative occupations of automobile detailer, lab equipment cleaner, and produce packer. *Id.* at 37. The ALJ then concluded that Plaintiff was not disabled. *Id.*

5

**DISCUSSION**

In the decision before the court, the ALJ erred at step two and beyond by failing to develop the record as to Plaintiff's hypoparathyroidism diagnosis and the full extent of Plaintiff's treatment by Gardner Family Health and her reported daily therapy sessions. The ALJ further erred by failing to provide "specific, clear, and convincing" reasons for dismissing Plaintiff's symptom testimony. Because the ALJ did not properly develop the record, the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence and remand for further proceedings is required.

"The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings . . . [which] are inquisitorial rather than adversarial[,] [thus] [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). It is well established that "[i]n Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). "Given that a large portion of Social Security claimants either have no representation at all or are represented by non-attorneys" (*see Sims*, 530 U.S. at 112), courts have recognized that "[w]hen the claimant is unrepresented . . . the ALJ must be especially diligent in exploring for all the relevant facts." *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id*. As such, when the record consists of insufficient or ambiguous evidence, it is incumbent upon the ALJ to take reasonable steps to ensure that questions raised by the medical evidence are carefully addressed so that a determination of disability may be made on a sufficient evidentiary record. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999).

At the outset, the ALJ erred at step two by failing to address Plaintiff's hyperparathyroidism and its effect—either individually or in combination with her depression, anxiety, and obesity—on her functional limitations. As discussed above, Plaintiff's medical records contain diagnoses of hyperparathyroidism, as well as indications that it was serious enough to warrant consideration of surgery. The severity evaluation at step two is a *de minimis* test

6

intended to weed out the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de minimis* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is non-severe only if the evidence establishes a slight abnormality that has a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290. Plaintiff's hyperparathyroidism appears to be more than a minor impairment and potentially affects the severity of her symptoms. The ALJ's failure to even mention Plaintiff's hyperparathyroidism—let alone conduct the appropriate analysis—constitutes legal error. This error is not harmless, as proper consideration of all of Plaintiff's impairments may impact the ALJ's RFC analysis and his ultimate disability determination. Accordingly, the court **REMANDS** for further proceedings to develop the record as to the effect of Plaintiff's hyperparathyroidism on her ability to work.

Having found reversible error at step two, the court need not address the remainder of Plaintiff's claims. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). However, there are several other issues that require the ALJ's attention on remand. First, it appears that Plaintiff may have received care that is undocumented in the administrative record. Specifically, medical records from Gardner Family Health indicate a fairly aggressive six-month treatment plan, but there is no evidence detailing that treatment in the administrative record. Further, Dr. Reicherter's treatment notes indicate that Plaintiff talked with a therapist "daily" in April 2020, and yet the record contains no evidence of daily therapy appointments. These absences are conspicuous and trigger the ALJ's duty to develop the record. The records from Gardner Family Health and Dr. Reicherter indicate intensive treatment, which, if documented and retrieved, is likely to have a significant impact on the ALJ's disability determination. Thus, on remand, the ALJ is **ORDERED** to investigate whether evidence of further care from Gardner Family Health or daily therapy sessions in 2020 is missing from the administrative record, and, if so, to take the necessary steps to obtain that evidence.

Moreover, the ALJ failed to provide "specific, clear and convincing reasons" to dismiss Plaintiff's testimony, as is required by Ninth Circuit precedent. *See Lambert v. Saul*, 980 F.3d

1266, 1277 (9th Cir. 2020) (holding that a generic statement that the claimant's testimony is "not entirely consistent with the objective medical and other evidence" does not meet the "specific, clear and convincing" standard); *Treichler v. Comm'r Soc. Sec. Admin*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review") (internal citations and quotation marks omitted). Here, the ALJ stated only that Plaintiff's testimony was inconsistent with and unsupported by the medical evidence. AR at 35-36. Such general statements do not meet the "specific, clear and convincing" standard and are insufficient for the court's review.

This error is particularly harmful with respect to Plaintiff's testimony about her absenteeism. It is evident that the ALJ dismissed this portion of Plaintiff's testimony because the ALJ failed to include limitations on Plaintiff's ability to maintain regular attendance in her RFC. However, the ALJ did not cite any evidence that contradicts or is inconsistent with Plaintiff's allegations that her depressive episodes inevitably lead to absence from the workplace. As such, it is impossible for the court to discern whether the ALJ's dismissal of Plaintiff's testimony was reasonable or arbitrary. The ALJ's passing mention of "essentially moderate symptoms" does not suffice. Given the cyclic nature of Plaintiff's alleged symptoms, it is entirely reasonable that Plaintiff's medical history would contain evidence of mild or moderate symptoms alongside evidence of more severe symptoms. *See Trevizo v. Berryhill*, 871 F.3d 664, 679 99th Cir. 2017) ("Occasional symptom-free periods are not inconsistent with disability.") (internal quotations and citations omitted). By the court's review, that is exactly what Plaintiff's record demonstrates. *See* Summary of Relevant Evidence *supra*. Indeed, the omission of any discussion of Plaintiff's absenteeism in determining her RFC is particularly concerning given the ALJ's finding at step one that Plaintiff's work attempts were unsuccessful because of her depressive episodes. *See* AR at 29-30. Accordingly, on remand the ALJ is **ORDERED** to reassess Plaintiff's testimony and, if necessary, to provide "specific, clear and convincing" reasons for dismissing Plaintiff's allegations.

As to Plaintiff's other claims, the ALJ is **ORDERED** to consider the issues raised in Plaintiff's briefing and to modify any ensuing opinion as necessary. *See Cortes v. Colvin*, No.

8

2:15-cv-02277-GJS, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 WL 6626322, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 WL 1056787, at *5 (N.D. Cal Mar. 19, 2021).

## CONCLUSION

For the reasons stated above, the court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion is **DENIED**. This case is remanded for further proceedings consistent with this order. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: March 21, 2024

ROBERT M. ILLMAN
United States Magistrate Judge